**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LARRY FOLLMAN, | ) | |
| individually and on behalf of a class, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 07 C 2934 |
| v. | ) | Judge Moran |
| | ) | Magistrate Judge Cole |
| HOSPITALITY PLUS OF | ) | |
| CARPENTERSVILLE, INC., doing | ) | |
| business as CULVER'S, | ) | |
| and DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT**

**I.      INTRODUCTION**

The motion to dismiss filed by Leiblys, LLC, doing business as Culver's of Gurnee

("Leiblys"), is a bad-faith attempt to induce the Court to (a) ignore all decisions on point, which

hold that the statute invoked by plaintiff is clear and unambiguous, despite identical efforts by

other defendants to create confusion, and (b) ignore the express terms of Fed.R.Civ.P. 9(b),

which provides that state of mind may be alleged generally.

Defendant repeatedly complains about the number of other cases filed by plaintiff, by

plaintiff's counsel, and by consumers nationwide which make the same Fair Credit Reporting

Act receipt redaction claim as here.  This is totally irrelevant to the issue of whether this

complaint states a claim.  *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006),

found that the other cases filed by one person, one counsel and others were irrelevant.  By the

same token, the number of cases filed alleging one particular violation of the law is also

irrelevant.  There are no decisions "supporting the proposition that someone whose rights have

been violated by 50 different persons may sue only a subset of the offenders."  *Id.*  Defendant's

1

constant repeat of its mantra merely seeks to attempt to prejudice this Court against plaintiff.

This is improper and futile, and demonstrates the paucity of defendant's legal arguments.

## II.     THE ALLEGED VIOLATION

Plaintiff claims that defendant violated the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* ("FCRA"), as amended by the Fair and Accurate Credit Transactions Act of 2003, P.L. 108-159, 117 Stat. 1952 ("FACTA").  15 U.S.C. §1681c(g)(1) provides that

> **No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**

Plaintiff alleged that "on or about April 24, 2007, and May 8, 2007, plaintiff received from Culver's computer-generated receipts which displayed plaintiff's card expiration date." (Amended Complaint, ¶11.)  This allegation unequivocally states a fact which shows a violation of the FCRA.

The purpose of the "truncation requirement" of 15 U.S.C. §1681c(g) is to prevent identity theft or fraudulent use of credit or debit cards.  The Federal Trade Commission estimates that over nine million persons each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion.  One common *modus operandi* of identity thieves is to steal credit card receipts and statements, and then use the information on the receipts to engage in transactions.  Identity thieves who do this are known as "carders" and "dumpster divers." This *modus operandi* is more common than the use of sophisticated electronic means to obtain the information.  Robin Sidel, "Identity Theft  – Unplugged  – Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," *Wall Street Journal*, Oct. 5, 2006 at B1 (<u>Exhibit A</u>).

The expiration date is necessary for misuse of the card number.  If an identity thief retrieves from a victim's garbage a document that contains the card number but not the

expiration date (such as a monthly credit card statement), the information is not usable. However, if the monthly statement is accompanied by a credit card receipt containing the expiration date, the identity thief has all the information needed to commit fraud.

To curb this means of identity theft, Congress prohibited merchants who accept credit cards and debit cards from issuing electronically-generated receipts that display either the expiration date or more than the last five digits of the card number. The law gave merchants who accept credit cards or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006. 15 U.S.C. §1681c(g)(3). The receipt in this case was printed about five months after this effective date.

## III. STANDARD OF REVIEW

In *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007), the Supreme Court held that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, [127 S. Ct. 1955, 1964 (2007)] (quoting *Conley v. Gibson*, [355 U.S. 41, 47 (1957)]). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp.*, *supra*, [127 S.Ct. at 1964-1965] (citing *Swierkiewicz v. Sorema N. A.*, [534 U.S. 506, 508, n. 1 (2002)] *Neitzke v. Williams*, [490 U.S. 319, 327 (1989)]; *Scheuer v. Rhodes*, [416 U.S. 232, 236 (1974)]).

## IV. THE 15 U.S.C. §1681c(g) TRUNCATION REQUIREMENT IS UNAMBIGUOUS

15 U.S.C. §1681c(g) prohibits a merchant from printing "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder." This section of FACTA is not ambiguous; it "expressly prohibits printing more than the last five digits of the credit/debit card numbers and also prohibits printing the card's expiration date." *Pirian v. In-N-Out Burgers*, 2007 U.S. Dist. LEXIS 25384, *8 (C.D.Cal. Apr. 5, 2007). *Pirian* held that the defendant's argument that a credit card's expiration date could be printed, so long as less than five digits of the credit card number appeared on the receipt, relies on "a tortured

reading of a statute that is not ambiguous on its face." *Id*.

Similarly, *Lopez v. Gymboree Corp.*, 2007 U.S. Dist. LEXIS 44461, *10 (N.D.Cal. June 8, 2007) held that §1681c(g)

> is not vague and ambiguous because the plain language of this section has only one reasonable meaning. "No person... shall print more than the last 5 digits of the card number or the expiration date upon any receipt" means that (1) no person shall print more than the last 5 digits of the credit card number upon any receipt and (2) no person shall print the expiration date upon any receipt. Both of defendant's proposed alternative interpretations are illogical and strained.

The frivolousness of defendant's position is illustrated by the three "interpretations" of 15 U.S.C. §1681c(g) that it offers. (Defendant's Memorandum at 12-13.) Defendant argues, for example, that the prohibition on printing "more than the last 5 digits of the card number or the expiration date" in §1681c(g) could reasonably be interpreted as authorizing the merchant to print the entire card number as long as the expiration date is omitted or to print the expiration date as long as only the last five digits of the card number are printed. Both of these interpretations were rejected by *Lopez*, *supra*, as "illogical and strained." Further, "no reasonable person would think this was Congress' intent." *Arcilla v. Adidas Promotional Retail Operations, Inc.*, 2007 U.S. Dist. LEXIS 48206, *10 (C.D.Cal. May 3, 2007).

Defendant also claims that §1681c(g) could mean that a merchant must print no more than the last five digits of the card number, and no more than the last five digits of the expiration date. But credit card expiration dates are almost always four digits (*e.g.*, 08/07 for August, 2007). Six-digit and eight-digit expiration dates are rare at best. *Aeschbacher v. California Pizza Kitchen*, 2007 U.S.Dist. LEXIS 34852, *9-*11 (C.D.Cal. Apr. 3, 2007). Congress is presumed to have some minimal understanding of the subject about which it is legislating; members of Congress have credit cards and get receipts. It is absurd to construe a statute as prohibiting the printing of more than five digits of the expiration date when expiration dates normally have only four numbers. "To read the 'last 5 digits' as modifying 'the expiration date,'

4

a firm would have to believe that the statute was unconcerned with dates expressed in the 'MM/YY' format." *Arcilla v. Adidas*, 2007 U.S. Dist. LEXIS 48206 at *10-*11. Even in the odd case of a six digit expiration date, defendant's reading would only protect the first digit, which must be either 0 or 1 (since there are 12 months). A statute "protecting" card expiration information in this manner would be nonsensical. *Aeschbacher v. California Pizza Kitchen*, 2007 U.S.Dist. LEXIS 34852 at *10.

Defendant's argument becomes even more ludicrous when one considers the fact that *the receipts given to plaintiff state a four-digit expiration date.*[1] Thus, according to defendant, the prohibition on stating the expiration date on a receipt does not apply to those who merely print a four-digit expiration date, which is the length of the standard expiration date on credit and debit cards, and which was in fact printed on the receipts defendant gave to plaintiff. Such a reading would make this statutory provision meaningless. This Court must not accept this farcical argument.

The only rational reading of the statute is that merchants may not print any part of the expiration date and may not print more than five digits of the card number, and the digits printed must be the last ones. That is the position of the Federal Trade Commission, which reminded businesses to conform their receipts to the new law, as follows:

> According to the federal Fair and Accurate Credit Transaction Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten—or truncate—the account information. You may include no more than the last five digits of the card number, and you must delete the card's expiration date. For example, a receipt that truncates the credit card number and deletes the expiration date could look like this:
>
> ACCT:**********12345

---

[1] The receipts given to plaintiff by defendant are in the possession of his counsel, and will be produced to this Court for its inspection immediately upon its request.

EXP: **** [2]

"FTC Reminds Businesses Law Requires Them to Truncate Credit Card Data on Receipts,"
May 30, 2007 (Exhibit B). It is also the explanation provided to Congress. 149 Cong Rec. H
8122, at H 8130 (Sept. 10, 2003) ("prohibit retailers from printing the expiration date and more
than the last five digits of a consumer's credit or debt card number on electronic receipts"). So
have Courts considering this issue; the "plain meaning of §1681c(g) is that a retailer may not
print more than the last five digits of the credit card number, and may not print the expiration
date." *Aeschbacher v. California Pizza Kitchen*, 2007 U.S.Dist. LEXIS 34852 at *10-11.
*Accord*, *Pirian*, *Lopez*, and *Arcilla*, *supra*; *Blanco v. El Pollo Loco, Inc.*, 2007 U.S.Dist. LEXIS
31231, *5-*6 (C.D.Cal. Apr. 3, 2007) and *Ehrheart v. Lifetime Brands, Inc.*, 2007 U.S. Dist.
LEXIS 56763 (E.D.Pa. July 17, 2007).

Most critically, it is what the card issuers told merchants to do. Rules provided to
merchants by Visa stated exactly what needed to be done, complete with a diagram of a sample
receipt:

> Visa requires that all new electronic POS [point-of-sale] terminals provide account
> number truncation on transaction receipts. This means that only the last four digits of an
> account number should be printed on the customer's copy of the receipt.
>
> In addition, the expiration date should not appear at all. Existing POS terminals must
> comply with these requirements by July 1, 2006. To ensure your POS terminals are
> properly set up for account number truncation, contact your merchant bank. (Exhibit C at
> 62.)

Defendant's claim that the statute is "vague," when defendant is party to a contract which
contains a diagramed picture of a receipt showing exactly what information had to be
suppressed, is astounding. No merchant who desired to comply with the statute, and who was
contractually obligated to comply as defendant was here (Amended Complaint, ¶¶35-36) could

---

[2] The FTC assumes a four-digit expiration date. Its direction to merchants regarding
compliance with FACTA shows that defendant's belief that the last *five* numbers of the date may
be disclosed is a complete fantasy.

6

legitimately misunderstand what is required.

That the truncation requirement was readily understandable is demonstrated by the fact that the merchant community had no difficulty comprehending and complying with it.  Plaintiff alleges that the overwhelming majority of retailers eliminated the entire expiration date and all but the last four or five digits of the card number.  (Amended Complaint at 6-7.)

Defendant's suggestion that there is a "clear grammatical error" and that the statute should have said "[A] and [B]" is bogus.  (Memorandum at 12.)  Prohibitions on conduct often state that "no person shall do [A] or [B]."  This means that "no person shall do [A]," and that "no person shall do [B]."  For example, the Fifth Amendment states that "No person shall... be deprived of life, liberty or property without due process of law."  This means that no person shall be deprived of life without due process, no person shall be deprived of liberty without due process, and no person shall be deprived of property without due process. One of the three is sufficient for a violation.  On the other hand, if a statute says "no person shall do [A] and [B]," the normal meaning is that both act [A] and act [B] must be performed before there is a violation.

Defendant bases its claim that the statute is ambiguous on charts of cases alleging violations of 15 U.S.C. §1681c(g), and claiming that "matters of public record, such as the complaints identified in [the charts], may be considered in Leiblys' Motion to Dismiss." (Memorandum at 13-14.)  This is improper.  The cases listed by defendant do not have anything to do with the actions of defendant with respect to plaintiff and putative class members.  Only the existence of a complaint, and not the truth of the matters alleged, are matters of public record of which judicial notice may be taken.  Defendant's argument is nothing more than a red herring, and a thinly-veiled *ad hominem* attack.  The fact remains that 15 U.S.C. §1681c(g) is unambiguous about what is required of merchants, and that defendant failed to comply.

At any rate, the number of lawsuits filed on this provision of FACTA affects a tiny

proportion (about .003%) of the number of merchants who accept credit cards; Visa and

Mastercard credit and debit cards are accepted at approximately 6.6 million establishments,

while American Express and Discovery cards are accepted at about 4 million merchants each.

(Exhibit D.)  Plaintiff has stated a claim that defendant is a part of a small subset of merchants

that willfully violated the law.

## V.     INTENT MAY BE AVERRED GENERALLY; THE AMENDED COMPLAINT MORE THAN COMPLIES WITH THIS REQUIREMENT

Defendant claims that the plaintiff "has pled bare conclusory allegations of 'willful'

violations of Section 1681c(g)...." (Memorandum at 5.) This is not true; the complaint includes

the following allegations which show that the alleged violation was reckless:

- "FACTA was enacted in 2003 and gave merchants who accept credit card and/or debit cards up to three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006" (Amended Complaint, ¶30);

- "defendant  knew of the truncation requirement"  (*Id.*, ¶31);

- credit card companies and businesses that sell credit card readers and similar equipment "informed defendant about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition on the printing of expiration dates, and defendant's need to comply with the same" (*Id.*, ¶32);

- the requirement was "widely publicized" among retailers, with press releases and new policies on truncation of credit card information being disseminated throughout the industry for years (*Id.*, ¶¶33-34; see Exhibit E attached hereto);

- credit card companies such as Visa proceeded "to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date" (*Id.*, ¶35);

- "most of defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement" (*Id.*, ¶37); and

- notwithstanding the fact that defendant could have done likewise, it willfully disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA (*Id.*, ¶¶37-38).

Allegations identical to, or even less than, those in the present case have repeatedly been found sufficient. *Pirian*, *Lopez*, *Arcilla*, *Aeschbacher* and *Blanco*, *supra*; *Clark v. Marshalls of MA, Inc.*, 2007 U.S.Dist. LEXIS 33492 (C.D.Cal. March 14, 2007).

In any event, Fed.R.Civ.P. 9(b) expressly provides that "malice, intent, knowledge, and other condition of mind of a person may be averred generally." The level of detail required is demonstrated by Official Form 10 to the Federal Rules of Civil Procedure, which pleads a claim for "willful" misconduct by simply using the word "willfully." Fed.R.Civ.P. 84 provides that "the forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate."

Nothing in *Bell Atlantic* purports to require anything more. Only two weeks later, in *Erickson*, 127 S.Ct. at 2200, the Supreme Court reiterated that notice pleading applies in federal court:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the... claim is and the grounds upon which it rests.'" [*Bell Atlantic*, 127 S. Ct. at 1964].

*Erickson* held the following was sufficient: "The complaint stated that [a doctor's] decision to remove petitioner from his prescribed hepatitis C medication was 'endangering [his] life'.... It alleged this medication was withheld 'shortly after' petitioner had commenced a treatment program that would take one year, that he was 'still in need of treatment for this disease,' and that the prison officials were in the meantime refusing to provide treatment.... This alone was enough to satisfy Rule 8(a)(2)." *Erickson*, 127 S.Ct. at 2200.

The Seventh Circuit recently discussed at length the *Bell Atlantic* decision in *Equal Employment Opportunity Commission v. Concentra Health Services, Inc.*, 2007 U.S. App. LEXIS 18487 (7th Cir. Aug. 3, 2007). *Concentra* found that it was "doubtful" that "*Bell Atlantic* changed the level of detail required by notice pleading." *Concentra*, 2007 U.S. App. LEXIS

18487 at *26 n.4. The Court specifically held that *Bell Atlantic* does not eliminate notice pleading. *Id* at *10 n.1. It is necessary only to state "easily provided, clearly important" facts as allegations in a complaint. *Id.* at *24. Nor was Fed.R.Civ.P. 9(b)—which provides that "intent... may be averred generally"—eliminated by *Bell Atlantic*. For example, in *Concentra*, the Court found that a complaint which alleges that "I was turned down for a job for a reason forbidden by Title VII" would be inadequate, while an allegation that "I was turned down for a job because of my race" would be sufficient—the latter statement represents a general statement of intent acceptable under Rule 9(b). *Id*. at *22-*25. A plaintiff specifically does not have to know, and allege, "every factual detail supporting [his] right; requiring the plaintiff to plead those unknown details before discovery would improperly deny the plaintiff the opportunity to prove [his] claim." *Id*. at *16.[3] See *Ehrheart v. Lifetime Brands, Inc.*, 2007 U.S. Dist. LEXIS 56763 (E.D.Pa. July 17, 2007) (allegations virtually identical to those made here are sufficient under *Bell Atlantic*).

Plaintiff specifically alleges that the August 12, 2006 edition of "Rules for Visa Merchants," which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." Visa required complete compliance with this requirement by July 1, 2006—five months ahead of the statutory deadline. (Amended Complaint, ¶36.) In fact, the cited Visa Rules actually contain a picture of what information had to be deleted from the receipt. (Exhibit C.)

It is utterly inconceivable that any businessman looking at the picture could

---

[3] Indeed, plaintiff—and consumers generally—are not privy to all facts known by a retail business, as they are not employed by that business. Requiring a consumer to state an all-encompassing knowledge of defendant's activities in his complaint before being able to state a claim on which relief could be granted would essentially destroy consumers' right to recover damages under any lawsuit brought under a consumer protection statute.

misunderstand what was required. Plaintiff alleges that defendant is a party to the contract. The allegations set forth go far beyond the minimum requirement.

In its rush to concoct bogus arguments, defendant stumbles over itself by arguing that "its actions constitute a reasonable interpretation of the statute." (Memorandum at 15.) If defendant was interpreting the statute, it knew of it. Defendant's arguments are a little like those of a murderer who claims that he has an alibi, but that if he was at the scene, he acted in self-defense. Neither claim has any credibility.

## VI.      DEFENDANT MISREPRESENTS *SAFECO*

Defendant grossly misrepresents the recent Supreme Court decision in *Safeco Insurance Co. of America v. Burr*, 127 S.Ct. 2001 (2007). What *Safeco* requires reckless disregard of is the "risk of violating the law..." *Safeco*, 127 S.Ct. at 2215. *Safeco* does not require that plaintiff allege that "Hospitality Plus knew a high risk of harm existed from printing an expiration date on a card receipt...." (Memorandum at 11.)

If defendant knew what the truncation requirement of 15 U.S.C. §1681c(g) required, or knew that such a requirement existed—as plaintiff has properly alleged—then defendant's alleged violation of the law was, at the very least, reckless. Furthermore, *Safeco* specifically held that a reckless violation exists where the reading of the statute is unreasonable. *Safeco* at 2215. The readings of the statute suggested by defendant are totally unreasonable, as a number of Courts, the FTC, Visa and millions of merchants have correctly found. Here, defendant knew the legal obligation and that its receipts contained the expiration date.

Having found that reckless violations of the FCRA are actionable under 15 U.S.C. §1681n, the Court turned to the meaning of that term. The Court first found that, under common law, the term means "conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco* at 2215

11

(quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Here, the harm at issue is the violation of the statute.

The Court also relied on the *Second Restatement of Torts*, §500, which found that a person acts recklessly when he "does an act or intentionally fails to do an act which it is his duty to the other to do, *knowing or having reason to know* of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." *Id*. (emphasis added). Thus, recklessness occurs when someone either (1) knows what should be done but fails to do it or (2) should know, but avoids learning about a duty and violates that duty. *Vigortone Ag Products v. AG Products*, 316 F.3d 641, 645 (7th Cir. 2002) (recklessness exists where someone was not "careless but, worse... closed his eyes to a known or obvious risk")); *Desnick v. American Broadcasting Cos.*, 233 F.3d 514, 517-518 (7th Cir. 2000) (reference to "ostrich defense" or "willful blindness"). As such, *Safeco* relied on *Farmer* for the proposition that recklessness includes "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco* at 2215 (quoting *Farmer*, 511 U.S. at 836).

The facts alleged show that defendant knew, or should have known, that the receipts that it was producing did not comply with the law. Thus, plaintiff can sustain a claim that defendant recklessly, or willfully, violated the FCRA.

Defendant claims that *Kodrick v. Ferguson*, 54 F.Supp.2d 788, 790-798 (N.D.Ill. 1999) stands for the proposition that knowledge of an employee is "insufficient to attribute knowledge to [a] company under FCRA." (Memorandum at 7-8.) This misstates what *Kodrick* held. The Court held that "a subscriber is not liable under [15 U.S.C.] §1681n or §1681o for its employee's unauthorized willful violations of the Fair Credit Reporting Act, *where the employee of the*

12

*subscriber obtained [a credit] report under false pretenses and for personal use without the express or implied approval of her supervisors.*" *Id*. at 798 (emphasis added). In such a case, the employee would be acting outside the bounds of his or her responsibilities. *Kodrick* explained further that "this is not a case where company supervisors knew their facilities were being used to obtain reports for impermissible purposes. Nor is there any allegation that Accubanc recklessly gave access to its credit bureau facilities to employees who would not need to conduct credit checks to carry-out work within their job description." *Id*. at 797-798.

Here, there are allegations along those lines—plaintiff claims that defendant knew, or should have known, that a law existed and did not comply with that law after being put on notice that the law affected defendant. Thus, this Court should find that "knowledge and actions of a corporation's employees and agents are generally imputed to the corporation where the acts are performed on behalf of the corporation and are within the scope of their authority." *United States v. One Parcel of Land in Three Lakes, Wisconsin*, 965 F.2d 311, 316 (7th Cir. 1992) ("Only knowledge obtained by corporate employees acting within the scope of their employment is imputed to the corporation"); *Zurich Capital Markets, Inc. v. Coglianese*, 332 F.Supp.2d 1087, 1108 (N.D.Ill. 2004) (similar).

Defendant also improperly claims that it cannot be held liable for a willful violation based upon the erroneous conclusion of judges in California that the inclusion of an expiration date on a receipt cannot result in identity theft. (Memorandum at 11.) If an identity thief can put a receipt containing an expiration date together with a monthly credit card statement that a consumer throws away, the identity thief has all the information needed to commit fraud. Regardless, the law is clear that an expiration date of a credit or debit card cannot appear on the receipt. Plaintiff has clearly stated allegations supporting a claim that defendant violated this law either recklessly or willfully.

13

Defendant also claims that allegations made "on information and belief" are insufficient to sustain a claim. This is not so. The Seventh Circuit has long held that, "where pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed." *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) (quoting *Tankersley v. Albright*, 514 F.2d 956, 964 n.16 (7th Cir. 1975)). Plaintiff here has alleged facts with sufficient specificity to state a claim on which he can obtain relief.

## VII.  NO ACTUAL DAMAGES ARE REQUIRED TO SUSTAIN A CLAIM

In a continued attempt to denigrate plaintiff with irrelevant arguments, defendant repeatedly whines that plaintiff has no actual damages, and that damages could be "annihilating." (See Memorandum at 2, 13.) This concern was addressed in full by *Murray v. GMAC Mortgage Corp*., 434 F.3d 948 (7th Cir. 2006). The Court held that "individual losses, if any, are likely to be small—*a modest concern about privacy, a slight chance that information would leak out and lead to identity theft*. That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury." *Murray*, 434 F.3d at 953 (emphasis added). Furthermore, the aggregated damages for the putative class can be controlled." Damages "that would be unconstitutionally excessive may be reduced, see *State Farm Mutual Automobile Insurance Co. v. Campbell*, [538 U.S. 408 (2003)], but constitutional limits are best applied after a class has been certified." *Id*.

This is a question for another day. Defendant's raising of the question here does it no good, for plaintiff has adequately pled that defendant failed to comply with 15 U.S.C. §1681c(g), and that its failure was reckless or willful.

## VIII.  CONCLUSION

For the reasons stated, the Court should deny defendant's motion to dismiss.

Respectfully submitted,


/s/ Thomas E. Soule
Thomas E. Soule

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Thomas E. Soule
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

I, Thomas E. Soule, hereby certify that on August 13, 2007 a copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS** was filed electronically, and that a copy of the same was sent to the following individuals, by operation of the Court's electronic filing system:

Daniel Kaufman (dakaufman@michaelbest.com)
Laura Liss (lsliss@michaelbest.com)


/s/ Thomas E. Soule
Thomas E. Soule

15